# United States Bankruptcy Court

# District of Massachusetts

```
_____
                               )
In re:                         )
                               )    Chapter 7
SALIENCE ASSOCIATES, INC.,     )    Case No. 03-44142-HJB
                               )
         Debtor.               )
_____)
                               )
TALI A. TOMSIC, Chapter 7      )
Trustee,                       )
                               )    Adversary Proceeding
         Plaintiff,            )    No. 05-4171
                               )
    v.                         )
                               )
ROBERT STOCKARD,               )
                               )
         Defendant.            )
_____)
```

### MEMORANDUM OF DECISION

Before the Court is a Motion for Summary Judgment, filed by the Defendant, Robert Stockard. The motion is opposed by the Plaintiff, Tali A. Tomsic as Chapter 7 trustee of Salience Associates, Inc. (the "Trustee"; the "Debtor"). The Trustee's complaint, brought under 11 U.S.C. § 547(b),[1] seeks to avoid a transfer made by the Debtor to Stockard within

---

[1] Because the instant bankruptcy case was filed in 2002, statutory amendments to § 547 subsequently made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") are not applicable here. Unless otherwise noted, all statutory references are to Title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code") as in

one year of the filing of the Debtor's bankruptcy petition.

**I.    FACTS & TRAVEL OF THE CASE**

The relevant facts are not materially disputed.

Prior to filing its Chapter 7 bankruptcy petition, the Debtor was a professional sales outsourcing company that provided sales teams and market launching services to other companies.[2]  At all times relevant to the matter now before the Court, Stockard served as the president of the Debtor.

During the year 2002, the Debtor was sliding into the financial decline that eventually led to its bankruptcy.  On November 14, 2002, well within one year of the commencement of this case, the Debtor received a wire transfer in the amount of $99,990.00 from Stockard's personal savings account at the Abington Savings Bank (the "Loan").  Approximately two weeks later, on November 29, 2002,[3] the Debtor made a payment to

---

effect in the year 2002.

[2] The Court obtained its understanding of the nature of the Debtor's business from documents filed in support of a motion for summary judgment in a related adversary proceeding, styled Tomsic v. Sales Consultants of Boston, Inc., (In re: Salience Associates, Inc.), - - B.R. - - (Bankr. D. Mass. 2007), Adversary Proceeding No. 05-4172. It is offered solely as background information.

[3] Appended to Stockard's affidavit in support of the Motion for Summary Judgment were statements from both his personal account at Abington Savings Bank and from the Debtor's business checking account.  Stockard's bank statement indicates that he deposited the payment from the Debtor on November 27, 2002, but the Debtor's bank statement indicates that the funds did not clear the Debtor's account until November 29, 2002.  Although the difference in dates is not material here, the date of the Transfer is deemed to be November 29, 2002.  Barnhill v. Johnson, 503 U.S. 393, 394, 112 S. Ct. 1386, 1388 (1992).

Stockard in the amount of $100,000.00 (the "Transfer").[4]

The Debtor filed its Chapter 7 bankruptcy petition with this Court on July 14, 2003. The Trustee filed the instant complaint under § 547(b) on July 13, 2005. After answering, Stockard filed his Motion for Summary Judgment, contending that the Trustee cannot recover because the Transfer was a contemporaneous exchange for new value and/or a payment made in the ordinary course of business - affirmative defenses set forth in § 547(c)(1) and (2), respectively. The Trustee filed her opposition to Stockard's Motion for Summary Judgment, but did not append any affidavits or any other evidence in support. After hearing, the matter was taken under advisement.

## II.    POSITIONS OF THE PARTIES

### A.    The Trustee

The Trustee maintains (without disagreement from Stockard) that, as president of the Debtor, Stockard was a *per se* "insider" of the Debtor.[5] Accordingly, the Trustee may

---

[4] The ten-dollar discrepancy between the Loan and the Transfer is due to a wire transfer fee of $10.00 that was charged to Stockard's personal account by the Abington Savings Bank.

[5] The term "insider" is defined, in relevant part, by the Bankruptcy Code to include:

> if the debtor is a corporation–
>
> (i)     director of the debtor;
> (ii)    officer of the debtor;
> (iii)   general partner of the debtor; or
> (iv)   corporation of which the debtor is a director, officer or person in control. . .

11 U.S.C. § 101(31)(B).

avoid applicable transfers made within one year prior to the case commencement. 11 U.S.C. § 547.[6] In her complaint, the Trustee alleges, without pleading specific facts in support of her asseveration, simply that:

> The transfers to Robert Stockard were made in payment of an antecedent debt owed by the Debtor to the Defendant for services and would enable the Defendant to recover more than it [sic] would otherwise receive as a creditor if (a) the bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (b) the transfer had not been made, and (c) the Defendant received payment of its [sic] debt to the extent provided pursuant to the provisions of the Bankruptcy Code.

Pl.'s Compl. ¶ 10.

In her opposition to the Motion for Summary Judgment, the Trustee does little more than restate § 547(b) of the Bankruptcy Code and note that "[t]he Complaint and Answer provide evidence of the elements of Section 547 of the Bankruptcy Code." She adds,

---

[6] Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of interest of the debtor in property–

    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made--
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) *between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider*; and
    (5) that enables such creditor to receive more than such creditor would receive if–
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). (Emphasis supplied).

however, that while it is undisputed that Stockard received the $100,000.00 Transfer from the Debtor during the insider preference period, it "is not clear whether the Transfer was intended to satisfy, or, on account of, monies loaned to the Debtor, by the Defendant, prior to the Petition Date and within one year of the Petition Date."  With respect to the affirmative defenses raised in Stockard's Motion for Summary Judgment, see infra, the Trustee first acknowledges that those defenses are provided under § 547(c)(1) and (2), and then simply states that "[i]n this case, there is no documentary evidence of the purpose of the payment."  She provides no further facts to support her opposition to the affirmative defenses raised by Stockard.

### B.    Stockard

In his Motion for Summary Judgment, Stockard focuses not on the Trustee's case under § 547(b), but on the affirmative defenses of contemporaneous exchange for new value, pursuant to § 547(c)(1) (the "Contemporaneous Exchange Defense"), and payment in the ordinary course of business, pursuant to § 547(c)(2) (the "Ordinary Course of Business Defense").  The Contemporaneous Exchange Defense precludes the avoidance of a transfer–

> to the extent that such transfer was–
>
> > (A)   intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> > (B)   in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).  Stockard contends that, at the time of the Loan, the Debtor was experiencing financial difficulties such that it was unable to meet impending payroll

5

obligations. He maintains that both he and the Debtor intended his Loan to be short-term in nature and that "[i]t was the unequivocal intention of Stockard and the Debtor that the Loan would be repaid and in fact was repaid within a short time after its receipt." Stockard submits that the modifier "substantially" in § 547(c)(1)(B) suggests that the time lapse between the making of a loan to a debtor and its repayment is subject to a case-by-case inquiry as to whether the transfer was contemporaneous to the initial credit. He contends that the approximate two week period between the time that the Loan was made to the Debtor and the time that Stockard was repaid for that loan constitutes a substantially contemporaneous time frame and maintains that, as a result, the Transfer may not be avoided.

Alternatively, Stockard contends that the Ordinary Course of Business Defense applies to the Transfer. This defense precludes the avoidance of a transfer–

> to the extent that such a transfer was–
>
> > (A)  in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
> > (B)  made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> > (C)  made according to ordinary business terms.

11 U.S.C. § 547(c)(2). Stockard states that he had extended similar short-term loans to the Debtor on several prior occasions when it had experienced cash shortages, such that the practice of short-term loans from Stockard to the Debtor constituted the ordinary course of business between the two. Stockard does not focus on any industry standard, but maintains that the Transfer, which is one example of allegedly similar subjective dealings between himself and the Debtor, is a "'paradigmatic example of the type of transaction

6

promoted by § 547(c)(2)' [citing <u>In re Fulghum Constr. Corp.</u>, 872 F.2d 739, 744 (6th Cir. 1989)]. . . which is designed to encourage creditors to conduct business with struggling enterprises so that debtors can rehabilitate themselves, precisely what occurred here."

### III.   DISCUSSION

#### A.   The Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[7] Where the moving party is the party who would bear the burden of proof at trial,[8] Rule 56 provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). (Emphasis supplied). The First Circuit has interpreted this provision to mean that while the absence of a genuine dispute as to a material fact is a necessary prerequisite to a finding of summary judgment in favor of the movant, the lack of such a dispute, without more, is not necessarily enough to require such a finding. <u>See</u> <u>Desmond</u>

---

[7] Federal Rule of Civil Procedure 56 is made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7056.

[8] Stockard bears the burden of proof as to his affirmative defenses under § 547(c). 11 U.S.C. § 547(g).

7

v. Varrasso (In re Varrasso), 37 F.3d 760, 764 (1st Cir. 1994) (characterizing the absence of a material factual dispute as a "condition necessary," but not a "condition sufficient," to summary judgment). Accordingly, the burden is on the moving party to show that it is *entitled to* judgment as a matter of law. Id.

The court must view all facts and draw all reasonable inferences in favor of the nonmoving party. Id. at 763. But here, the nonmoving party has failed to attach affidavits, depositions, answers to interrogatories, or any form of evidence whatsoever to her response to the motion for summary judgment. The Trustee's opposition effectively rests on "mere allegations or denials of the adverse party's pleading" and has failed to "set forth specific facts showing that there is a genuine issue for trial." See, supra, Fed. R. Civ. P. 56(e). Rule 56(e), then, requires that this Court grant summary judgment in favor of Stockard, but only "if appropriate." Accordingly, it is incumbent upon this Court to determine whether Stockard has supported the allegations set forth in his Motion for Summary Judgment with sufficient evidence to warrant a determination, as a matter of law, that the Transfer is protected by either of the affirmative defenses that Stockard has raised.

### B.    The Contemporaneous Exchange Defense - § 547(c)(1)

Section 547(b) empowers the bankruptcy trustee to avoid preferential transfers and serves to prevent the unequal (preferential) treatment of a debtor's creditors as it slides into bankruptcy. 5 Collier on Bankruptcy, ¶ 547.01 (15th ed. 2007), citing, inter alia, H.R. Rept. No. 595, 95th Cong., 1st Sess. 177-78 (1977) ("[Section 547(b)] facilitate[s] the prime bankruptcy policy of equality of distribution among creditors of the debtor"). Congress recognized, however, that there may be certain transfers to creditors during the preferential

8

period that ought to be protected from avoidance and § 547(c) codifies specific types of transfers that Congress intended to protect.

Contemporaneous exchanges for new value are exempted from avoidance pursuant to § 547(c)(1). In order to establish The Contemporaneous Exchange Defense, a creditor must show *both* that the debtor and the transferee intended that the transfer be a contemporaneous exchange for new value *and* that the transfer was in fact a contemporaneous exchange. 11 U.S.C. § 547(c)(1); see also, Gray v. Oppenheimer & Co., Inc. (In re Molten Metal Tech., Inc.), 262 B.R. 172, 176 (Bankr. D. Mass. 2001). There is no question that Stockard transferred new value to the Debtor - the sum of $99,990.00. The Court is therefore left to consider whether the Debtor and Stockard intended that the Transfer be a contemporaneous exchange for the Loan and whether the two were, in fact, substantially contemporaneous.

Questions regarding intent are typically fact sensitive and, thus, are not ideally determined by summary judgment. However, the First Circuit has acknowledged that even questions involving intent may be disposed of through summary judgment if the adverse party merely rests on the pleadings in her opposition. See, Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The evidence now before this Court is limited to the pleadings of the respective parties, the affidavit submitted by Stockard (the "Stockard Affidavit"), and relevant bank statements of the Debtor and Stockard from the time of the Loan and the subsequent Transfer. Beyond her opposition to the Motion for Summary Judgment, the Trustee has provided this Court with absolutely no evidence to refute Stockard's sworn statement that he and the Debtor intended the Loan to be short-term.

Stockard states, under oath, that "[o]n several occasions, [he] agreed to make a

9

short-term loan (the "Loan") to the Debtor so that it could meet its payroll obligations on the understanding that the loan would be repaid as soon as the Debtor obtained the funds needed to do so and with the expectation that the funds would be available in the very near future." Stockard Aff. ¶ 4. He further testified that "[i]t was [his] intention and the intention of the Debtor that the Loan would be repaid and in fact was repaid within a short time after its receipt." Id. ¶ 5.

At the hearing on the Motion for Summary Judgment, counsel to the Trustee did emphasize that there was no written agreement memorializing the terms of the Loan and noted that "[t]he problem the Trustee has is that there is no back-up or no explanation as to what these payments are for... There's been no evidence as to the use by the Debtor of that $100,000.00, whether the Debtor did, in fact, satisfy payroll obligations or some other obligation." However, this argument fails to take into consideration Stockard's uncontroverted affidavit, in which he swears that the Loan was used as intended, to cover payroll.[9]

---

[9] That Stockard's strongest evidence is in the form of a self-serving affidavit does not constrain this Court's reliance on the information attested to therein. The First Circuit has made clear that "[a] party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." Cadle Co. v. Hayes, 116, F.3d 957, 961 n. 5 (1st Cir. 1997). And to reiterate, the Stockard Affidavit was uncontroverted by the Trustee. Counsel to the Trustee admitted at the hearing to having requested the production of documents and to having actually reviewed the Debtor's documents. Hr'g Tr. 19:17-18. He also admitted that no depositions were taken on behalf of the Trustee. Id. 19:22. He did, however, state that "[t]his is a case where the Debtor had literally hundreds of boxes of documents that are currently being stored at the accountant's office." Id. 19:18-20. Regardless of why that statement was made, its effect was to alert the Court to the fact that the Trustee did have access to all of the Debtor's documents, and had the opportunity to review them, but yet failed to present any evidence to the Court that the parties intended for the loan to be anything other than a short-term loan from Stockard to the Debtor to cover its payroll expenses in a time of financial trouble.

Still, even in the absence of evidence to the contrary from the Trustee, the circumstances attendant to the Loan and the Transfer leave the Court troubled. According to the Stockard Affidavit, the Loan was made because the Debtor ran out of operating funds. The Loan was not to be repaid until the Debtor had the funds necessary to do so. The Stockard Affidavit fails to disclose facts which would suggest that, at the time of the making of the Loan, the parties had a realistic expectation that funds were to be received imminently by the Debtor to enable repayment. As such, it is difficult to infer that the parties intended a "contemporaneous" repayment. An intention that the funds would be repaid whenever they became available is not the same as an intention of contemporaneity. Indeed, it would seem to be its opposite.

Similar concerns surround the question of whether the Loan and the Transfer were "in fact" substantially contemporaneous - that is, whether the lapse of two weeks between the Loan and the Transfer constitutes substantially contemporaneity. Stockard directs this Court's attention to the case of Morse Operations, Inc. v. Goodway Graphics of Va., Inc. (In re Lease-A-Fleet), 155 B.R. 666 (Bankr. E.D. Pa. 1993). There, the debtor was the recipient of short-term loans from an affiliate, one of which was repaid during the preference period prior to the filing of its chapter 11 bankruptcy case. The Lease-A-Fleet court described the lending relationship between the debtor and the affiliate as follows:

> The Debtor borrowed from [the affiliate] in times of need, particularly when monthly lease payments were due from the Debtor to [its lessor], and the Debtor repaid [the affiliate] when and if it could.

155 B.R. at 683. The Lease-A-Fleet court found that the transferee had established its § 547(c)(1) defense. But, even if this Court were to follow Lease-A-Fleet, the transferee there was repaid the very day after the short-term loan at issue, which does not help

11

Stockard.

Stockard is correct to note that the modifier "substantially" in § 547(c)(1)(B) renders contemporaneity a flexible concept, subject to an individual examination of the facts and circumstances relevant to a particular case. See Pine Top Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 969 F.2d 321, 324 (7th Cir. 1992). This Court agrees, and, for that very reason, coupled with its discomfort over the question of intentionality set forth above, finds that granting summary judgment, even in the absence of an effective defense by the Trustee is not "appropriate." Fed. R. Civ. P. 56(e).

**C.     The Ordinary Course of Business Defense - § 547(c)(2)**

In order for his defense to prevail under § 547(c)(2) (as here applicable in form prior to the changes made by BAPCPA), Stockard must show that the Loan was incurred by the Debtor in the ordinary course of business or financial affairs of the Debtor and Stockard, the Transfer was made in the same ordinary course, and the Transfer was made according to the standard practices of the relevant industry. 11 U.S.C. § 547(c)(2). It is plausible that the Stockard Affidavit sufficiently establishes that he has the requisite personal and first-hand knowledge to support the first two of the three elements of the Ordinary Course of Business Defense. However, with respect to the third, this Court is perplexed as to which industry Stockard refers. If Stockard refers to the professional sales outsourcing industry, he fails to set forth specific facts in his affidavit, or elsewhere, to establish that he possesses first-hand knowledge of the standard practices of that industry, particularly with

12

respect to any practice of principals granting short-term loans for operation.[10]  Without credible evidence of the industry practice, Stockard cannot now prevail on his Ordinary Course of Business Defense under § 547(c)(2).

### IV.  CONCLUSION

For the foregoing reasons, Stockard's "Motion for Summary Judgment" is DENIED.

A separate Order in conformity with this Memorandum of Law shall issue forthwith, which Order shall also schedule a further pre-trial conference.

By the Court,

DATED:    July 3, 2007

_____
Henry J. Boroff
United States Bankruptcy Judge

---

[10] If instead, Stockard refers to the practice, sometimes employed by small businesses in financial distress, of borrowing money from principals and then repaying those loans when money is available, this Court would suggest that "businesses in financial distress" can not be characterized as comprising their own industry.